IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | | |
|---|---|---|
| In re: | Cornerstone Log & Timber Homes, Inc.<br>Debtor. | Case No. 09-04503-8-RDD |
| Address: | P.O. Box 438<br>Red Oak, NC 27868 | Chapter:    7 |

MOTION FOR RELIEF FROM STAY TO PERMIT
LITIGATION OF STATE COURT ACTION

NOW COME James and Deborah Hussmann (hereinafter "Movant"), by and through their undersigned attorney, David F. Mills, and hereby move the Court for an order modifying the automatic stay pursuant to Section 362(d) so as to enable the Movant to continue litigating a civil action pending in the Rutherford County Court, North Carolina, Docket Number 09-CvS-455, and captioned "James and Deborah Hussmann v. Cornerstone Log & Timber Homes, Inc. (hereinafter "Civil Action"). In support of said motion, the Movant respectfully shows unto the Court as follows:

1. The Movant initiated the Civil Action by filing a Complaint on March 27, 2009, seeking actual and consequential damages of the Debtor for breach of contract. A true and correct copy of the Complaint is attached hereto as Exhibit "A" and incorporated by reference.

2. The Movant obtained Entry of Default in the Civil Action against the Debtor on April 30, 2009. A true and correct copy of the default entry is attached hereto as Exhibit "B" and incorporated by reference.

3. The Debtor filed its petition for relief under Chapter 7 on May 30, 2009.

4. Upon information and belief, the Movant has certain rights to recover their losses from the North Carolina Homeowner's Recovery Fund. Such recovery may only be considered, however, after the Movant obtains a judgment that cannot be collected.

5. The Movant is requesting that the automatic stay be modified so as to allow the Movant to proceed to litigate the Civil Action and to take such steps as necessary to determine the amount of its damages proximately resulting from the Debtor's breach of contract.

6.     Granting relief from the automatic stay is in the best interest of judicial economy and will not prejudice the interest of the Trustee or other parties in interest, nor will it impair the administration of the Estate.

7.     The facts as alleged herein constitute good cause for granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d).

WHEREFORE, the Movant prays unto the Court that the automatic stay imposed by 11 U.S.C. §362 be modified so as to permit James and Deborah Hussmann, the Movant, to pursue the Civil Action in state court in accordance with applicable state law; and to engage in discovery with the Debtor and to do such other acts as are part of or ancillary to the Civil Action under applicable state law.  The Movant further requests that the 10-day stay imposed by Rule 4001(a)(3) is not applicable to the Court's order on this motion; and the Movant respectfully requests such other and further relief as to the Court seems just and proper.

This the  28th  day of July, 2009.

>
> DAVID F. MILLS, P.A.
> 1559-B Booker Dairy Rd.
> Smithfield, NC 27577
> Telephone:  (919) 934-7235
> Facsimile: (919) 989-1529
>
>
> By:    /s/ David F. Mills
>        David F. Mills, State Bar No: 18326
>        Counsel for Movant, James and Deborah Hussmann

EXHIBIT A

| | |
|---|---|
| STATE OF NORTH CAROLINA<br>COUNTY OF RUTHERFORD | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>09 CVS ____ |

JAMES and DEBORAH HUSSMANN,

        Plaintiffs,

vs.

CORNERSTONE LOG & TIMBER HOMES, INC.

        Defendant.

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

THE PLAINTIFFS, through counsel, complaining of the Defendants, allege and say:

## GENERAL FACTUAL ALLEGATIONS

1. The Plaintiffs are citizens and residents of St. Johns County Florida;

2. The Defendant is a North Carolina Corporation with a principal place of business in Nash County, North Carolina;

3. The Defendant formerly was a North Carolina Limited Liability Company and converted to a corporation on February 20, 2008.

4. The Defendant is a licensed general contractor in the state of North Carolina.

5. Terri Groves and William Shaw are officers of the Defendant.

6. At all times relevant herein the Defendant has held itself out to the public as a vendor for log home "packages" and as a contractor for the erection of log home "packages."

7. On or about April 15, 2004 the Plaintiffs contracted with the Defendant for the sale, erection and completion of a log home to be built at 154 Misty View Drive, Bostic, North Carolina, said location being in Rutherford County (hereinafter the "Log Home").

8. The parties at various times subsequent to April 15, 2004, including on June 29, 2004 and August 30, 2004 entered into various agreements and amendments enlarging the scope and cost of the construction project that was to be completed by the Defendant (collectively with the agreement referenced in paragraph 7 the "Agreements").

9. The Defendant impliedly warranted to the Plaintiffs that all work performed pursuant to the Agreements would be performed in a workmanlike manner.

10. The Defendants impliedly warranted to the Plaintiffs that all work performed pursuant to the Agreements would be performed according to the applicable North Carolina building codes.

11. The Plaintiffs have complied with and are not in breach of any provision of the Agreements.

12. The Defendant failed to complete the construction of the Log Home in a timely manner, failed to complete the Log Home according to the minimum standards of the applicable North Carolina building codes and failed to perform certain aspects of the construction of the Log Home in a workmanlike manner.

13. The parties executed an agreement on September 5, 2007 entitled "Completion Agreement" and attached hereto as Exhibit A.

14. The parties agreed in the Completion Agreement that pursuant to its contractual obligations to the Plaintiffs, the Defendant was obligated to perform certain tasks with regard to the construction of the Log Home that were unfinished as of the date of the Completion Agreement; the Completion Agreement also required the Defendant to remediate certain defective work.

15. The Construction Agreement gave the Defendant one hundred eighty (180) days after its execution to complete the work specified in the Completion Agreement.

16. To date, the Defendant has failed to complete the work required of it by the Completion Agreement.

17. Further, some of the work performed by the Defendant pursuant to the Completion Agreement is defective and not of a workmanlike quality.

18. The Defendant has breached the Agreements and has breached the Completion Agreement by failing to complete the construction of the Log Home and by failing to perform certain aspects of their work in a workmanlike manner.

19. The Plaintiffs have suffered actual and consequential damages by the contractual breaches of the Defendant in a sum in excess of ten thousand dollars ($10,000.00).

THEREFORE, the Plaintiffs herein pray the Court as follows:

1. That the Plaintiffs have and recover of the Defendant a sum in excess of ten thousand dollars ($10,000.00) for actual and consequential damages for the Defendant's breaches of contract.

2. That the Plaintiffs have and recover of the Defendant all costs and expenses incurred by the Plaintiff in this action.

3. That the Plaintiffs have and recover of the Defendant for the attorney's fees they incurred in this matter.

4. That the Plaintiffs receive a trial by jury on all issues.

5. That the Plaintiffs have and receive such other additional relief as the Court deems just and proper.

This the 27 day of March, 2009.

_____
Joshua B. Farmer
Attorney for the Plaintiff
Tomblin and Farmer, PLLC
187 North Washington Street
Post Office Box 632
Rutherfordton, North Carolina 28139
(828) 286-3866 – Voice
(828) 286-4820 – Facsimile
NC State Bar# 32669

PLAINTIFF'S EXHIBIT A
Blumberg No. 5113

# COMPLETION AGREEMENT

THIS COMPLETION AGREEMENT ("Agreement") is made and entered into as of August ____, 2007 by and between Cornerstone Log & Timber Homes, LLC ("Cornerstone") and Mr. and Mrs. James Hussmann (the "Hussmanns").

WHEREAS, the Hussmanns and Cornerstone entered into a contract for the purchase of Cornerstone's modified "Asheville" Log Home Package;

WHEREAS, the Hussmanns and Cornerstone entered into a contract dated July 15, 2004 to construct the outside shell and foundation of the house for the sum of $165,400.00;

WHEREAS, the parties visited the site on March 2, 2006 in an effort to determine what additional work was within the scope of Cornerstone's responsibilities; and

WHEREAS, from March 2006 through August 2007, the parties discussed and negotiated the scope of Cornerstone's remaining work.

NOW, THEREFORE in consideration of the promises and mutual covenants set forth in this Agreement, and for other good valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Cornerstone will complete, at no cost to the Hussmanns, the work listed on Exhibit A attached hereto. This work will be begin within forty five to sixty (45-60) days from the execution of this Agreement and shall be completed as soon as practical, but no later than 180 days after execution of this Agreement. Weekly progress reports will be provided by Cornerstone to Hussmanns. All work is to be supervised and inspected by engineers Gary Queen and Mark Thompson, and Cornerstone shall bear all the costs associated with their supervision, inspections and approval of the work. Cornerstone will pay Hussmanns within thirty (30) days the sum of $2,500.00 as reimbursement for consequential damages associated with the repair work and delays in construction.

2. Cornerstone will warrant the work listed on Exhibit A for a period of two (2) years from it's completion.

3. Within ten (10) days of the execution of this Agreement, the Hussmanns will provide Cornerstone with the names of the subcontractors who the Hussmanns wish to perform the applicable re-work (i.e., plumbing and electrical subcontractors to work on re-stacked walls). Cornerstone will be responsible for contacting those subs and scheduling their work and will pay those subs directly. In the event that those subs are unable to return to work on the project, Cornerstone will locate other acceptable subcontractors to complete the project. Cornerstone must pre-approve any fees that the Hussmann's contend is Cornerstone's responsibility.

4. The Hussmanns will renew the building permit they took out for the work in question. Cornerstone will reimburse the Hussmanns for the cost of the new building permit. The Hussmanns will provide Cornerstone with a record of all inspections done to date on the property, including inspections of the work done by the Hussmanns' subcontractors. The building inspector shall have the final say over whether the house has been completed to code. Obtaining a Certificate of Occupancy shall be prima facie evidence that the house is constructed in compliance with all applicable codes.

5. The Hussmanns, their heirs, agents, successors, assigns, and personal representatives hereby RELEASE, ACQUIT AND FOREVER DISCHARGE Cornerstone, and its predecessors, successors, agents, assigns, servants, employees, officers, directors, board members and attorneys from any and all claims, all actions or causes of action, demands, damages (both actual and punitive), costs, back pay, front pay, judgments, expenses, liabilities, attorneys' fees and legal costs, injunctive or declaratory relief, whether known or unknown, whether in law or equity, including but not limited to the allegations and claims related to the log home and other improvements to 154 Misty View Drive (Lot #130), Bostic, North Carolina, all to the end that all claims and matters that are, or might be, in controversy between the Hussmanns and the persons and entities released herein at the time of the signing of this Agreement are forever put to rest, it being the Hussmanns' clear intention to forever discharge and release all its claims against those persons and entities released herein. It is expressly understood by the Hussmanns that this Agreement may be pleaded as a defense in bar or abatement of any action brought in furtherance of any released claim. This release excludes and does not waive any liability of Cornerstone for latent structural defects on work performed prior to this Agreement.

6. Cornerstone, for itself, its heirs, agents, successors, assigns, and personal representatives hereby RELEASES, ACQUITS AND FOREVER DISCHARGES the Hussmanns and their predecessors, successors, agents, assigns, servants, employees, officers and attorneys from any and all claims, all actions or cause of action, demands, damages (both actual and punitive), costs, back pay, front pay, judgments, expenses, liabilities, attorneys' fees and legal costs, injunctive or declaratory relief, whether known or unknown, whether in law or equity, including but not limited to the allegations and claims related to the log home and other improvements to 154 Misty View Drive (Lot #130), Bostic, North Carolina, all to the end that all claims and matters that are, or might be, in controversy between Cornerstone and the persons and entities released herein at the time of the signing of this Agreement are forever put to rest, it being Cornerstone's clear intention to forever discharge and release all its claims against those persons and entities released herein. It is expressly understood by Cornerstone that this Agreement may be pleaded as a defense in bar or abatement of any action brought in furtherance of any released claim.

7. Nothing in this Agreement shall be construed as an admission of any liability or wrong-doing.

8. This Agreement is confidential. The Parties agree that they will not reveal or release to any non-Party in any manner this Agreement, or any part thereof, or any of the matters, factual or legal, contained in the Agreement.

9. The Parties agree not to discuss this matter or this Agreement with persons who are not parties to this matter. The Parties agree not to make disparaging remarks about the other Party.

10. This Agreement shall be governed by and construed, interpreted and enforced in accordance with the internal laws of the state of North Carolina without reference to any choice or conflict of law provisions which would operate to make the internal laws of any other jurisdiction applicable. Any and all litigation to court proceedings initiated by either party which involves this Agreement shall be brought in Rutherford County, North Carolina, with the parties hereby specifying Rutherford County as the appropriate venue for such actions.

11. Neither this Agreement, nor any provision hereof, may be waived, modified, amended, discharged, or terminated, except by written instruments signed by the Party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

12. This Agreement is the only agreement between the Parties with respect to the subject matter hereof. This Agreement contains all of the terms agreed upon, and there are no other agreements, oral or written, between the Parties with respect to the subject matte hereof; nor have any promises or representations been made by or to any Party except as expressly set forth herein.

13. All Parties have had the full benefit of counsel and of representation in the negotiation, preparation, drafting and execution of this Agreement; all Parties have read and each party adopts this Agreement and enters into, executes, and delivers this Agreement as its own and voluntary act with full authority.

14. It is understood that each party to this Agreement shall have the burden and responsibility of paying for and satisfying any claims for attorneys' fees, disbursements, costs and other expenses incurred by each party with respect to their legal representation and this controversy.

15. If any provision of this Agreement is held to be illegal, invalid, or unenforceable under any present or future laws, such provision shall be fully severable and the remainder of this Agreement shall continue in full force. In lieu of any severed provision, there shall be added a provision with terms, and effect as similar as possible to such illegal, invalid, or unenforceable provision as may be possible, and legal, valid, and enforceable.

IN WITNESS WHEREOF, the Parties, through their duly authorized representatives, and intending to be legally bound by a sealed instrument, have executed this Agreement, under seal.

CORNERSTONE LOG & TIMBER HOMES, LLC

By: _Terri Grover_
Its _managing member_

Sworn to and subscribed before me this _5th_ day of _September_, 2007.

_Amanda M. Mills_
Notary Public  Amanda M. Mills
My Commission Expires: _May 20, 2009_

THE HUSSMANNS

_[signature]_
_Deborah C. Hussmann_

Sworn to and subscribed before me this _23_ day of _August_, 2007.

_Bethany L. Pack_
Notary Public  Bethany L. Pack
My Commission Expires: _August 29, 2010_



BETHANY L PACK
Notary Public, State of Florida
Commission# DD590214
My comm. expires Aug. 29, 2010

# Cornerstone / Hussmann Completion Agreement
## Exhibit A

1. Cornerstone will restack the kitchen exterior wall. *(See Queen Report dated 10-28-05, ¶ a.; and see Thompson Report dated 07-07-06, ¶ 11);*

2. The front (window) wall posts will be increased to a minimum dressed size of 6" x. 10" Eastern White Pine. *(See Thompson Report dated 07-07-06, ¶ 13; and see Thompson / Queen Report dated 03-12-07, ¶ b);*

3. With respect to the roof rafters, Cornerstone will install 2x12 collar ties at a maximum of four feet on center. The rafters will be fastened to these with (24) .131"x3" nails each end, with a minimum edge clearance of 2". *(See Thompson / Queen Report dated 03-12-07, ¶ 1);*

4. With respect to the plywood sheeting, Cornerstone will install 2x4 blocks with (3) 3/8" beads of construction adhesive @ 24" centers. The blocks will be fastened with (2) .131" x3" nails each end. *(See Thompson / Queen Report dated 03-12-07, ¶ 3);*

5. The chimney will be torn down to the main floor level and reconstructed. Any exposed foam will be covered with sheetrock or gypsum board. *(See Thompson / Queen Report dated 03-12-07, ¶ 5; and see Thompson Report dated 07-07-06, ¶ 6);*

6. Cornerstone will bring the exterior stairs, railing and handrail into code compliance. *(See Thompson Report dated 07-07-06, ¶ 1);*

7. Cornerstone will install new flashing over the deck rim joist and reinstall the deck board on the front deck. *(See Thompson Report dated 07-07-06, ¶ 2);*

8. Cornerstone will bolt 45 degree braces up from both sides of the exterior porch posts. *(See Thompson Report dated 07-07-06, ¶ 3);*

9. Cornerstone will install a hanger equal to USP # HUS28-2 at the end of deck band. *(See Thompson Report dated 07-07-06, ¶ 4);*

10. Cornerstone will remove the existing stucco and reapply / replace the stucco in the same color previously selected by the Owner.

11. Cornerstone will replace and / or reinstall the windows on the first floor of the house. Caulk will still show around the windows. *(See Thompson Report dated 07-07-06, ¶ 7);*

12. Cornerstone will anchor the support post at the top and bottom to prevent movement and assure that the posts supporting the balcony are solidly blocked down to the girder. *(See Thompson Report dated 07-07-06, ¶ 8);*

13. Cornerstone agrees to frame the pocket doors. Cornerstone requires the exact measurements of what the Hussmans will need and require. The pocket door to be installed is on site, and Cornerstone shall obtain the necessary measurements from the pocket door currently on site. If the doors will fit, Cornerstone will install the framing.

14. Cornerstone will correct the ridge joint above the closet.

15. Cornerstone will adjust the sliding glass doors.

16. Cornerstone will replace the damaged kitchen door and snap in grid.

17. Cornerstone will check the windows for operation and air tightness.

18. Once the chimney is rebuilt, the cap will be installed.

19. The fireboxes will be inspected and repaired or replaced as needed.

20. Cornerstone will repair or replace any damaged areas of the metal roof consistent with the manufacturer's recommendations and warranty.

21. The site will be cleaned at the start of repair work so that homeowner may undertaking grading and exterior work and shall be maintained by Cornerstone during the work with a final cleaning done by Cornerstone when all repair work is completed.

22. The interior stairs to the basement shall comply with code, and modifications to the stair framing shall be made prior to installing the finishes. *(See Thompson / Queen Report dated 03-12-07, ¶ 4; and see Thompson Report dated 07-07-06, ¶ 9);*

23. After all repairs are made, Cornerstone will clean water stains off the logs to customer satisfaction, and repair / replace any logs which are water damaged. *(See Thompson Report dated 07-07-06, ¶ 10);* [handwritten: logs will only be cleaned to the extent that the logs integrity will remain]

24. Cornerstone will add metal hangers or a ledger strip where the second floor joist ties to the exterior bands or interior headers. *(See Thompson Report dated 07-07-06, ¶12);*

25. Cornerstone will provide load capacities of the completed decks and porches.

26. Cornerstone will check for water and air leaks at the corners and joints, and they will caulk as necessary.

27. ~~Cornerstone will repair or replace the large split in the log located in the master bedroom closet.~~ [handwritten: 4-3-2007]

28. Cornerstone, along with the owner, shall identify areas where there are gaps in the stain application and correct those areas. [handwritten: after repairs are completed and will attempt to match the existing stain to the extent possible] [handwritten: 4-3-20..]

29. All windows and doors are to be flashed and water catchers installed.

30. Locks on all doors will be replaced when all repairs are completed.

31. Binswanger Glass Company will review the installation of all fixed glass and certify in writing that the installation is correct and properly sealed. Any and all damaged or cracked glass shall be replaced.

32. All door thresholds should be secured, stained and sealed to prevent moisture.

33. The basement doors shall be properly secured, sealed and adjusted, and all stucco shall be cleaned / removed from the doors.

34. If not addressed previously, the interior loft support post shall be secured all the way to the basement floor.

35. Johnny on Spot and dumpster shall be provided for by Cornerstone at their expense.

36. Cornerstone will repair the porch roof installation to secure to support beams and correct warping and sagging.

37. Cornerstone will remove the existing caulking and re-caulk using the manufacturer's recommended caulk in a color to match the existing logs and approved by owner.

38. During the repair work the property will be kept secure and protected from the elements.

39. Cornerstone will repair the window which recently "blew out".

40. Cornerstone will repair any popping nails from boards located on steps.



EXHIBIT B

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF RUTHERFORD     FILE NO. 09 CVS ~~1443~~ 455

JAMES and DEBORAH HUSSMANN,

            Plaintiffs,

vs.         **ENTRY OF DEFAULT**

CORNERSTONE LOG & TIMBER
HOMES, INC.

            Defendant.

---

THAT WHEREAS it has been made to appear to the undersigned Clerk of Superior Court of Rutherford County, North Carolina, upon Affidavit or otherwise that the Defendant, CORNERSTONE LOG & TIMBER HOMES, INC., has failed to plead and that the defaulting party is neither an infant nor incompetent; and

That the Defendant, CORNERSTONE LOG & TIMBER HOMES, INC., is otherwise subject to default judgment as provided by the Rules of Civil Procedure.

NOW THEREFORE, default is hereby entered against, CORNERSTONE LOG & TIMBER HOMES, INC., a defendant in this action, as provided by Rule 55(a) of the Rules of Civil Procedure.

This the 30 day of April, 2009.

            _Robyn L. Spence_
            Clerk of Superior Court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | | |
|---|---|---|
| In re: | Cornerstone Log & Timber Homes, Inc. Debtor. | Case No. 09-04503-8-RDD |
| Address: | P.O. Box 438<br>Red Oak, NC 27868 | Chapter:   7 |

NOTICE OF MOTION

TO:   TRUSTEE, DEBTOR, DEBTOR'S ATTORNEY, AND BANKRUPTCY ADMINISTRATOR

NOTICE IS HEREBY GIVEN of the Motion for Relief from Stay to Permit Litigation of the Civil Action filed in Rutherford County, North Carolina, captioned James and Deborah Hussmann v. Cornerstone Log & Timber Homes, Inc., File No. 09-CvS-455, in order to allow Movant to liquidate its claim against the Debtor; and

FURTHER NOTICE IS HEREBY GIVEN that this Motion may be allowed provided no response and request for a hearing is made by the Debtor, Trustee, or other parties in interest in writing to the Clerk of this Court within 15 (fifteen) days from the date of this Notice; and

FURTHER NOTICE IS HEREBY GIVEN that if a response and a request for a hearing is filed by the Debtor, Trustee, or other parties in interest named herein in writing within the time indicated, a hearing will be conducted on the Motion and response thereto at a date, time and place to be later set by this Court and all interested parties will be notified accordingly.  If no request for a hearing is timely filed, the lack of response will be deemed consent to James and Deborah Hussmann's Motion and the Court may rule thereon ex parte without further Notice.

DATE OF NOTICE:  July 28, 2009.

DAVID F. MILLS, P.A.
1559-B Booker Dairy Rd.
Smithfield, NC 27577
Telephone:  (919) 934-7235
Facsimile: (919) 989-1529


By:   /s/ David F. Mills
      David F. Mills, State Bar No: 18326
      Counsel for Movant, James and Deborah Hussmann

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | | |
|---|---|---|
| In re: | Cornerstone Log & Timber Homes, Inc. Debtor. | Case No. 09-04503-8-RDD |
| Address: | P.O. Box 438<br>Red Oak, NC 27868 | Chapter:   7 |

### CERTIFICATE OF SERVICE

I, David F. Mills, Attorney at Law, 1559-B Booker Dairy Rd., Smithfield, North Carolina 27577, certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on the  28th day of July, 2009, I served a copy of foregoing Notice of Motion for Relief from Stay to Permit Litigation of State Court Action on the following:

| VIA FIRST CLASS MAIL | VIA CM/ECF | VIA CM/ECF |
|---|---|---|
| Cornerstone Log & Timber Homes, Inc. | Kevin L. Sink | Stephen L. Beaman |
| Attn: Managing Agent | Attorney for Debtor | Chapter 7 Trustee |
| P.O. Box 438 | Nicholls & Crampton, P.A. | And |
| Red Oak, NC 27868 | P.O. Box 18237 | Marjorie K. Lynch |
| | Raleigh, NC 27619 | Bankruptcy Administrator |

I certify under penalty of perjury that the foregoing is true and correct.

This the  28th day of July, 2009.

                      DAVID F. MILLS, P.A.
                      1559-B Booker Dairy Rd.
                      Smithfield, NC 27577
                      Telephone:  (919) 934-7235
                      Facsimile: (919) 989-1529

                      By:    /s/ David F. Mills
                            David F. Mills, State Bar No: 18326
                            Counsel for Movant, James and Deborah Hussmann